## Hobbs v. Commonwealth.

(Decided April 22, 1924.)

### Appeal from McCracken Circuit Court.

Abduction—Conviction for Detaining Woman Held Sustained by Evidence.—In prosecution for detaining woman against her will,

with intent to have carnal knowledge of her, evidence held sufficient to sustain conviction.

M. E. GILBERT for appellant.

F. E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

Opinion of the Court by Judge McCandless—Affirming.

Appellant was convicted of the crime of detaining a woman against her will, with intent to have carnal knowledge with her, and his punishment was fixed at two years in the penitentiary.

The prosecuting witness is his daughter, aged 22 years. She was raised in an orphanage where she was sent when a small child and remained until about a year before the trouble, when she returned to the home of her father, who had married a second wife.

According to her statement, her father had always treated her kindly. She spent the night of the 8th of July, 1922, at home alone; that about two o'clock the next morning her father came home intoxicated and prepared for bed, requesting her to get in bed with him. She declined, and he told her if she did not he would come over and get in bed with her. Thereupon he did go to her bed, lean over her, make indecent proposals to her and raise her clothing and insist on having sexual intercourse with her; that she begged him to desist and drew down her clothes, and that he did not persist further.

The next morning he milked the cow and the two went in a buggy to early church and were there joined by her step-mother who accompanied them home, where they had breakfast; that after breakfast she told her step-mother about it, and on the following day went to live with her brother.

The defendant denies all of this; he states that he lives in the country a short distance from Paducah; that Saturday evening he carried his wife to town, making arrangements to call for her on Sunday morning; that he put his horse and buggy in the livery stable and stayed overnight at a boarding house, leaving a call for 3 or 3:30 the next morning, and rooming with a young man

named Miller; that his landlord called him on Sunday morning about 3 or 4 o'clock; that he arose, went to the livery stable and procured his horse and buggy and drove home after daylight, passing two parties on the way; that the sun was up before he arrived home, where he fed and milked. He found his daughter at the house and he and she drove to town to church, where they were joined by his wife and the three drove back home, ate breakfast, stayed at home until after dinner, which they ate together; in the afternoon his wife and daughter went visiting and returned late in the evening, and the next morning the daughter went to work as usual; that he had no information of any complaint by his daughter until he was arrested Monday evening.

As to his alibi he was corroborated by the hotel proprietor and his wife, who said that they heard of the assault and that on the Saturday night previous the defendant stayed at their house and was called by the landlord a little after three o'clock Sunday morning; and by Henry Miller, who testifies as to occupying a bed at the boarding house in the same room with defendant on that night and that defendant was called and got up and left some time before daylight. The livery man also testifies that defendant left his horse and buggy with him that night and came in early the next morning for it. He did not get up but heard him get the horse, and thinks it was about four o'clock in the morning.

Two other witnesses testify that they saw the defendant driving out the road toward his home about five o'clock in the morning of July 9th. It will thus be seen that if the offense occurred the prosecuting witness is strongly contradicted as to the time of its commission, and this may be considered as affecting her credibility.

On the other hand it is conceded that the parties were at the house alone on that morning and that opportunity was afforded. As to what occurred at the house there were only two witnesses. The jury saw them as well as the other witnesses and had the opportunity of observing their deportment and demeanor and it was its province to pass on their credibility, and we cannot say that the verdict was so flagrantly against the evidence as to strike one at first blush as being the result of passion or prejudice.

The instructions follow the language of the statute, and as to them we cannot discover any just cause for criticism.

It appears that after the conviction a petition for pardon was filed with the Governor and that the prosecuting witness signed a paper, a copy of which is in the record, in which she stated that she testified under duress, and that she retracted her statements of the alleged wrong.

This is a pitiable case and if the defendant is not guilty a sad one, but we are unable to find any errors committed by the trial court that were prejudicial to his substantial rights, and as there is sufficient evidence to support the verdict of the jury the judgment is affirmed.